**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL WILLIAMS and )<br>ANGELIQUE WILLIAMS, )<br>)<br>Defendants. ) | **MEMORANDUM OPINION AND RECOMMENDATION**<br><br>1:09CV00513 |

In this case Plaintiff Ohio Casualty Insurance Company seeks a declaratory judgment regarding its rights and responsibilities under a policy of insurance issued to Defendants Michael and Angelique Williams. (docket no. 1.) Pending before this court is Defendants' motion to stay or, in the alternative, to dismiss without prejudice Plaintiff's declaratory judgment action pending final disposition of a similar suit filed by the Williamses in state court. (docket no. 5.) Since there has been no consent, I must deal with the motion by way of a recommendation. For the reasons stated herein, I will recommend that the court decline to exercise its jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) et seq., and dismiss this action without prejudice to the parties to litigate in state court the coverage issues raised here.

**Statement of the Facts**

This action arises from a dispute between Plaintiff Ohio Casualty Insurance Company (hereinafter "Ohio Casualty") and its policyholders Defendants Michael and Angelique Williams regarding a homeowners insurance policy that Ohio Casualty issued to the Williamses for a residence and personal property jointly owned by the Williamses in Salisbury, North Carolina. (Compl. ¶ 3.) In July 2007, the Williamses moved out of the Salisbury residence, as they had defaulted on their mortgage payments and failed to make payments as scheduled in Angelique Williams' Chapter 13 bankruptcy plan. (*Id.* ¶¶ 51-52.) On August 26, 2007, a fire broke out at the Williamses' Salisbury residence. The Williamses subsequently made a claim on their policy with Ohio Casualty for damage to the dwelling and the personal contents therein. (*Id.* ¶¶ 5-6.) On July 1, 2008, Ohio Casualty denied the claim on the grounds that the Williamses made material misrepresentations relating to the claim and engaged in fraud in violation of the contract provisions.[1] (*Id.* ¶ 7.)

---

[1] Ohio Casualty's claim that the Williamses materially misrepresented the value of the personal property lost in the fire is based on a substantial discrepancy between the figure demanded by the Williamses for personal property lost in the fire and the figure Angelique Williams filed in her final bankruptcy report. (Compl. ¶¶ 18-78.) On her final bankruptcy report, submitted on January 18, 2008, Angelique Williams averred under oath that she and her husband owned household goods and personal property with a total value of $1,945.00. (*Id.* ¶ 70.) In the claim that the Williamses submitted to Ohio Casualty, however, they claimed $58,000.00 for personal property destroyed in the August 2007 fire. (*Id.*) Ohio Casualty's fraud claims are based on its allegation that the Williamses participated either directly or indirectly in causing the fire that destroyed the insured property. (*See id.* ¶¶ 77-99.)

Shortly thereafter, on September 24, 2008, the Williamses' counsel sent a letter to Ohio Casualty notifying Ohio Casualty's counsel of his representation and of the Williamses' intention to file suit based on Ohio Casualty's denial of their claim. (docket no. 14, Ex. 1.)  After months of unsuccessful negotiations, on June 11, 2009, the Williamses' counsel made another demand that Ohio Casualty pay the Williamses' claim.  With the demand letter, counsel attached a proposed complaint to be filed in Forsyth County Superior Court if Ohio Casualty did not pay the claim by July 1, 2009.  (*Id.*, Ex. 7.)  On July 7, 2009, with settlement negotiations still ongoing, the Williamses' counsel made a final demand that Ohio Casualty pay the Williamses' claim and reiterated their intent to file suit if the claim was not promptly paid.  (*Id.* ¶ 8.)

On July 15, 2009, without notifying the Williamses of its intention, Ohio Casualty filed this declaratory judgment action.  (docket no. 1.)  On July 20, 2009, Ohio Casualty's counsel informed the Williamses that their final settlement demand had been rejected, and that Ohio Casualty had filed the instant declaratory judgment action.  The Williamses subsequently filed a summons and complaint in Forsyth County Superior Court against Ohio Casualty and its employees Greg Haake (hereinafter "Haake") and J. Mac Tilley (hereinafter "Tilley"), alleging that Ohio Casualty breached its contract with the Williamses by failing to promptly pay the fire insurance claim at issue in the instant action. (docket no. 6, Ex. A.)  The Williamses further alleged that Ohio Casualty and its employees Haake and Tilley violated North

Carolina's Unfair and Deceptive Trade Practices Act in the handling of the Williamses' claim, that Ohio Casualty breached its duty of good faith and fair dealing with respect to its refusal to pay the claim, and that all three defendants in the state action engaged in civil conspiracy to deny the Williamses' claim in violation of North Carolina law. (*Id.*)

On August 6, 2009, the Williamses moved to stay or dismiss this action so that the parties could litigate the entire matter in the state court action. (docket no. 5.) Shortly after, on August 10, 2009, Ohio Casualty, Haake, and Tilley moved to dismiss the state court action by way of a plea in abatement. (docket no. 8.) The superior court judge presiding over the state action subsequently ordered the action stayed until January 5, 2010. (*Id.*)

**Standard of Review and Analysis**

Ohio Casualty brought this action pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The exercise of jurisdiction under the Act is not compulsory. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). Thus, even when a district court clearly has jurisdiction under the Act, it may in its discretion decline to exercise that jurisdiction if it determines that declaratory relief is not appropriate.

This circuit's court of appeals first made clear in *Aetna Casualty & Surety Co. v. Quarles* that 28 U.S.C. § 2201 gives district courts the discretionary authority to grant declaratory relief "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." 92 F.2d 321, 325 (4th Cir. 1937); *see also Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). Since then, the court of appeals has stated that a district court's discretion must be guided not only by the criteria outlined in *Quarles*, but also by considerations of federalism, efficiency, and comity. *Mitcheson v. Harris*, 955 F.2d 235, 237-40 (4th Cir. 1992). These additional concerns require a court to consider: (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (2) whether the issues raised in the federal action can be more efficiently resolved in the court in which the state action is pending; (3) whether permitting the action to go forward would result in unnecessary "entanglement" between the federal and state courts; and (4) whether the federal action is being used merely as a device for "procedural fencing"–that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994) (citations and internal quotations omitted).

Furthermore, in 1995, in *Wilton v. Seven Falls Co.*, the United States Supreme Court resolved two circuit conflicts concerning a district court's decision to decline jurisdiction in a declaratory judgment action. 515 U.S. 277 (1995). First, the *Wilton* Court held that the applicable standard for an appellate court's review of a district court's decision against exercising jurisdiction in a declaratory judgment action was not de novo, but abuse of discretion.[2] *Id.* at 289-90. The second split among the circuits involved the breadth of a district court's discretion in determining whether to exercise its jurisdiction in declaratory judgment actions. Several circuits, drawing on the language of the abstention doctrine developed in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), had held that a district court may decline jurisdiction in a declaratory judgment action under only "exceptional circumstances." *See Wilton*, 515 U.S. at 281-82 (collecting cases). Other circuits, including the Fourth Circuit, had held that a district court had more discretion in determining whether to exercise jurisdiction. The *Wilton* Court firmly rejected the "exceptional circumstances" standard of *Colorado River* and *Moses H. Cone* in the context of declaratory judgment actions, observing that neither *Colorado River* nor *Moses H. Cone* had involved an action brought under the Declaratory Judgment Act. *Id.* at 286. The *Wilton* Court stated that "[d]istinct features of the

---

[2] This holding overruled the Fourth Circuit's de novo review standard.

Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*." *Id.* The Supreme Court held, instead, that the rules of *Brillhart v. Excess Insurance Co.* govern a district court's decision to stay or dismiss a declaratory judgment action while parallel state court proceedings are pending. *Id.*

In *Brillhart*, an insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy. The *Brillhart* Court upheld the district court's refusal to exercise jurisdiction over the declaratory judgment action. In upholding the refusal to exercise jurisdiction, the *Brillhart* Court explained that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. The *Brillhart* Court further cautioned that when a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court." *Id.* The *Brillhart* Court noted that this consideration should be guided by a number of factors, including the nature and scope of the state proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding . . . ." *Id.* In discussing *Brillhart*, the *Wilton* Court observed:

> *Brillhart* indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference," if it permitted the federal declaratory action to proceed.

*Wilton*, 515 U.S. at 283 (citation omitted). Thus, in relying on *Brillhart*, the *Wilton* Court underscored the broad discretionary nature of the jurisdiction conferred under the Act:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.

*Id.* at 288.

Since *Wilton*, this circuit's court of appeals has stated that "[t]o whatever extent our previous decisions have implied further constraints on district court discretion, those decisions must give way to the clear teachings of *Wilton*." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257-58 (4th Cir. 1996) (citation omitted); *see also Beach Cove Assocs. v. United States Fire Ins. Co.*, 903 F. Supp. 959, 962 (D.S.C. 1995) (stating that "[t]he Supreme Court's holding in [*Wilton*] . . . indicates that a district court's discretion under the Declaratory Judgment Act is now wider than it was under pre-*Wilton* Fourth Circuit precedent"). Based on the principles enunciated by the Supreme Court in *Wilton* and the multi-factor balancing

test developed by the Fourth Circuit, this court must consider whether to exercise its jurisdiction over this declaratory judgment action.

In *Centennial Life Insurance Co. v. Poston*, the Fourth Circuit applied the multi-factor balancing test to affirm the dismissal of a federal declaratory judgment action in favor of a later-filed state court action. 88 F.3d at 257-58. Although the court noted that not all of the factors weighed in favor of dismissing the action, the Fourth Circuit determined that the district court did not abuse its discretion by dismissing the action based on its analysis of one significant factor–the state action contained a defendant and a number of issues not present in the federal action. *Id*. at 258.

Like *Centennial*, this action involves a later-filed state action and, also like *Centennial*, not all of the factors weigh in favor of dismissing this action. For instance, although this action involves mainly state contract law issues, the issues are not particularly "close," "difficult," or "problematic," and this court would not face any difficulty in applying them. *See Nautilus Ins. Co.*, 15 F.3d at 378. Thus, North Carolina's interest in having the issues decided in a North Carolina state court is weakened. Other factors, however, provide a sufficient basis for this court to conclude that the matter can be more efficiently resolved in the pending state action.

*1. Whether the issues raised can be more efficiently resolved in a state court action.*

Here, as was the case in *Centennial,* the pending state court action involves parties and claims not before the court in this action. Plaintiff Ohio Casualty asserts

that all additional claims in the state action are compulsory counterclaims to this action, and that the additional parties, Haake and Tilley, may be brought into this action through a third party complaint. Ohio Casualty's solution, however, requires the Williamses to take unnecessary steps to bring the entire controversy within this court's purview. The action pending before the Forsyth County Superior Court addresses the controversy comprehensively. Thus, because the entire controversy is already pending before the Forsyth County Superior Court, this court finds that the matter can be resolved more efficiently in state court. *Accord Alphatronix, Inc. v. Pinnacle Micro, Inc.*, 814 F. Supp. 455, 456 (M.D.N.C. 1993).

*2. Whether permitting the action to go forward would result in unnecessary "entanglement" between the federal and state courts.*

As to the entanglement of the federal and state court systems, any decision that this court makes regarding Ohio Casualty's coverage will preclude the state court from relitigating the issue. Indeed, Ohio Casualty no doubt brought this declaratory judgment action precisely because a ruling by this court on the coverage issue would be binding in the state court action. Thus, there is a clear threat of unnecessary entanglement between the state and federal courts in this case, and this factor weighs against this court exercising its jurisdiction.

*3. Whether the federal action is being used merely as a device for procedural fencing.*

Finally, procedural fencing does appear to be an element in this case. When Ohio Casualty brought this action for declaratory relief, settlement negotiations with the Williamses were still pending. Indeed, this action appears to be a classic race to the courthouse. It is, thus, an improper use of the declaratory judgment remedy. *See Alphatronix*, 814 F. Supp. at 456 ("The declaratory judgment remedy is *not a tactical device* whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse.") (emphasis in original). That is, after months of unsuccessful negotiations, on July 1, 2009, the Williamses provided Ohio Casualty with a copy of the complaint they proposed to file in state court if Ohio Casualty did not promptly pay their claim. Again, on July 7, 2009, the Williamses reiterated their intent to file suit and made a final settlement demand. Before Ohio Casualty provided the Williamses with a response, however, it filed this action, abruptly ending any possibility of pre-litigation settlement. It is clear that Ohio Casualty instituted this action in anticipation of coercive litigation. Because such a use of the declaratory judgment remedy is improper and a comprehensive action is pending in state court, this controversy can be more efficiently resolved in the state action.

## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the court **GRANT** the pending motion to stay or dismiss (docket no. 5) and that the court **DISMISS** this

declaratory action without prejudice to the parties to litigate in the pending state court action the insurance coverage issues raised here.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
January 15, 2010